IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 6, 2021

**STATE OF TENNESSEE v. TOMMY TAYLOR**

**Appeal from the Circuit Court for Lauderdale County**
No. 10835     Joe H. Walker, III, Judge

_____

**No. W2020-00338-CCA-R3-CD**

_____

Tommy Taylor, Defendant, was sentenced in Case No. RD 10835 to one year in split confinement followed by service of the balance of the sentence on community corrections. Defendant violated the rules of the institution where he was confined by being involved in two violent incidents with another inmate and one violent incident with a guard. The State moved to revoke Defendant's community corrections sentence. Following a hearing, the trial court revoked Defendant's community corrections sentence and ordered Defendant to serve his original sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed Pursuant to Court of Criminal Appeals Rule 20**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

David A. Stowers, Covington, Tennessee, for the appellant, Tommy Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**MEMORANDUM OPINION**

The record on appeal is sparse and does not contain the plea agreement, a transcript of the plea hearing, the judgment of conviction in Case No. RD 10835, or any document sentencing Defendant to community corrections. The only information we have concerning the case in which Defendant was sentenced to community corrections comes

from the trial court's revocation order, in which it summarized the procedural history of the case as follows:

> [D]efendant received a sentence of 13 years on May 9, 2019[,] for a B felony as a multiple offender. He was to be released to community corrections after 365 days in jail. After the plea agreement was entered and [D]efendant was serving the sentence[,] he was indicted for 1st degree murder in RD 10934. The alleged incident in the murder case occurred prior to the sentence in RD 10835. However, [D]efendant is in jail and unable to make the bond in the murder case to be released to supervision by community corrections.

The technical record contains a "Motion to Revoke CMC/Supervised Release," filed in Case No. RD 10835 by the State on January 8, 2020, alleging:

> 1. Defendant is on CMC/Supervised release in the above styled case. He is presently in jail on another case, Lauderdale #10934. The offense date in #10934 predated the offense date in #10835, so it did not result in a violation in #10835.
>
> 2. Defendant has been charged with [a]ggravated [a]ssault, while an inmate in the Lauderdale County Jail, offense date of 1/6/20. (warrants attached).
>
> 3. Based upon [D]efendant's new charges, his blatant disregard for the law, as well as his unwillingness to abide by the terms and conditions of his CMC/Supervised release in #10835, the State hereby requests that this Honorable Court revoke Defendant's CMC/Supervised release in this cause and order that this sentence be served in TDOC.

The trial court appointed counsel, and a hearing was held on February 10, 2020. Kevin Haislip, the jail administrator at Lauderdale County Sheriff's Department ("LCSD"), testified that Defendant had been involved in several altercations in January 2020 while incarcerated. Two incidents involved Tony Harris, an inmate housed in the same unit with Defendant. In the first incident, Mr. Harris entered Defendant's cell and assaulted Defendant. Both inmates were disciplined. In the second incident, Defendant attacked Mr. Harris with a weapon, a sock full of dominoes. This incident resulted in Defendant being charged with aggravated assault. A third incident occurred during a search of Defendant's cell by jail personnel. Defendant refused to drop an object in his hand, and a taser was deployed, but it had "no effect." During an effort to subdue Defendant, one guard had his jacket ripped by Defendant. The three incidents were captured on video.

LCSD Corporal Daniel Duncan said that he intervened during the first incident and that discipline was handled internally.

LCSD Corporal Marian Scott testified that she performed a routine cell search on Defendant's cell. As Defendant exited his cell, he grabbed an object. Corporal Scott instructed Defendant to drop the object, but Defendant refused. LCSD Sergeant Michael Ammonds became involved and warned Defendant to comply or that he would tase him. During the confrontation, Defendant swung at Sergeant Ammonds and then grabbed Sergeant Ammonds before he was subdued.

Sergeant Ammonds testified that he was involved in the third incident and used a taser in an effort to subdue Defendant. He said that the taser had no effect and that Defendant lunged at him. He used a chemical spray, again without effect. Defendant grabbed Sergeant Ammonds and tried to get his taser. He said he was able to get Defendant to the ground. Sergeant Ammonds's jacket was ripped during the incident.

Following the hearing, the trial court entered an order which stated:

> Officer Haislip with the jail testified about three separate incidents while [D]efendant was in jail about assaults, some with weapons. He has been charged with those assaults which are pending in another court. He has been moved to several other jails. [Officer] Haislip testified that he watched videos of [D]efendant entering cells where the assaults occurred. [D]efendant entered a cell[,] and the occupant had a black eye after [D]efendant left. On another incident a weapon was observed, a sock full of dominoes.
>
> Other officers testified about their observations of [D]efendant's assaultive behavior on other inmates and a guard while in custody in RD 10835. [Sergeant] Ammonds testified about [D]efendant grabbing him. [Corporal] Scott testified that on January 14, she observed [D]efendant not comply with directives and act combative with the guards.
>
> The court finds that [D]efendant is not able to be released to community corrections as he is being held for first degree murder in another case, and his conduct of violence with other inmates and guards while in jail is not behavior suitable for release to community corrections. The community corrections is revoked.

On appeal, Defendant claims that the trial court abused its discretion when it revoked his community corrections sentence. The State argues that the court acted within its discretion. We agree with the State.

The revocation of a community corrections sentence rests within the trial court's discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In this case, Defendant was sentenced to split confinement before being released into the community. "Split confinement sentences are technically probated sentences" and can be imposed with a community correction sentence. *Ray v. Madison Cty., Tennessee*, 536 S.W.3d 824, 837 (Tenn. 2017). If a defendant who is serving a split confinement sentence before being released on community corrections violates "the rules of the institution where the defendant is confined," the trial court has authority to revoke the community corrections sentence and resentence a defendant or, as the trial judge did in this case, impose the initial sentence. *Id.* at 834; Tenn. Code Ann. § 40-35-306(b) (2020).

We will not disturb the trial court's revocation ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's decision. *Id.* at 554-555 (citing *Harkins*, 811 S.W.2d at 82). "[A]n appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). If the record clearly shows that "the trial judge exercised conscientious judgment in making the decision rather than acting arbitrarily[,]" there is no abuse of discretion. *State v. Leach*, 914 S.W.2d 104, 107 (Tenn. Crim. App. 1995).

In this case, there is overwhelming evidence supporting the trial court's revocation of community corrections. Because this opinion would have no precedential value and because no error of law requiring a reversal of the judgment of the trial court is apparent in the record, we affirm the judgment of the trial court pursuant to Rule 20 of the Tennessee Court of Criminal Appeals.

_____
ROBERT L. HOLLOWAY, JR., JUDGE